UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| HERDGUARD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 5:16-cv-468-JMH-EBA |
| | ) | |
| NXT GENERATION PET, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*

Plaintiff Herdguard, LLC, was the creator of "Bodyguard 360,"[1] a dry powder scent suppression product developed to mask the scent of deer hunters. Representatives of Defendant NXT Generation Pet approached Herdguard representatives about acquiring Herdguard and Bodyguard 360. During negotiations, the parties, including manufacturer Vermont Soap, executed non-disclosure ("NDA") and confidentiality agreements. Herdguard and NXT failed to reach an agreement pertaining to the acquisition of Bodyguard 360. Still, Herdguard alleges that Defendants NXT and Vermont soap violated the agreements in two primary ways. First, Herdguard alleges that NXT and Vermont Soap reverse engineered the confidential formula for Bodyguard 360 and sold the reverse engineered product as a product called "Ultimate Outdoor Protection." Second, Herdguard

---

[1] The product name for Bodyguard 360 is spelled in a variety of ways in the record and pleadings. For consistency, the Court will spell the product name as "Bodyguard 360."

1

claims that NXT engaged in a business relationship with Vermont Soap, in violation of the non-circumvention clause in the Mutual NDA.

NXT and Vermont Soap moved for summary judgment. [DE 64, Motion for Summary Judgment by NXT and Jason Riccardi and DE 67, Motion for Summary Judgment by Vermont Soap]. Additionally, Herdguard moved for partial summary judgment. [DE 68, Herdguard Motion for Summary Judgment]. The parties have responded in opposition to the applicable motions for summary judgment. [DE 65. Response by Herdguard to DE 64; DE 74 Response by Herdguard to DE 67; DE 71 Response by Vermont Soap to DE 68; and DE 73 Response by NXT to DE 68]. Additionally, the parties have either replied in support of their motions or the time to reply has expired. [DE 69 Reply of NXT and Riccardi and DE 75 Reply of Vermont Soap]. As a result, this matter is ripe for review and consideration of all pending motions for summary judgment will be consolidated in this memorandum opinion and order.

For the reasons that follow, NXT and Riccardi's motion for summary judgment [DE 64] is **GRANTED IN PART** and **DENIED IN PART**, Vermont Soap's motion for summary judgment [DE 67] is **GRANTED**, and Herdguard's motion for partial summary judgment [DE 68] is **DENIED**.

## I. Procedural and Factual Background

Herdguard was the creator of Bodyguard 360, a dry powder scent suppression product originally marketed to mask the scent of deer

hunters.  [DE 67 at 1, 4, Pg ID 566, 569].  To produce Bodyguard
360, Herdguard used a base soap product sold by Vermont Soap that
was filtered through a substance known as diatomaceous earth.  [*Id.*
at 1-2, 4-5, Pg ID 566-67, 569-70].  The base soap product from
Vermont Soap was then infused with other proprietary ingredients
to produce Bodyguard 360.  [*Id.* at 4-5, Pg ID 569].

Sometime around May 2015, NXT's president, Jason Riccardi,
approached Herdguard owner Kenneth Stewart about NXT acquiring
Herdguard.  [DE 64 at 4, Pg ID 316; DE 68 at 2, Pg ID 748; DE 67
at 5, Pg ID 570].  During the negotiations, NXT and Herdguard
entered into two non-disclosure agreements ("NDAs").  The
"Herdguard NDA" was signed by the parties on May 20, 2015, and is
governed by Kentucky law.  [DE 64-4, Herdguard NDA].  The "Mutual
NDA," also dated May 20, 2015, is governed by New Jersey law.  [DE
64-5, Mutual NDA].  The parties do not remember which agreement
was signed first.

Then, on June 15, 2015, Herdguard and Vermont Soap entered
into a confidentiality agreement at Herdguard's request.  [DE 67-
5, Confidentiality Agreement; DE 67 at 6, Pg ID 571].  The
confidentiality agreement between Herdguard and Vermont Soap is
governed by Vermont law.  [DE 67-5 at 2, Pg ID 681].

Subsequently, NXT and Herdguard engaged in discussions about
NXT purchasing Herdguard.  [*See* DE 68-3, Various Emails].  On June

17, 2015, Crystal Geis,[2] a Herdguard employee, sent NXT the formula for Bodyguard 360. [DE 67-4 at 1, Pg ID 675]. Then, on June 26, 2015, Herdguard sent the formula for Bodyguard 360 to Vermont Soap through email. [DE 67-7 at 1, Pg ID 687].

At some point during the negotiations, NXT expressed interest in visiting Vermont Soap's facilities. Herdguard employees coordinated with officials at NXT and Vermont Soap to arrange for NXT representatives to visit Vermont Soap's manufacturing facility. [DE 68-1 at 9, Pg ID 770]. Riccardi and Beth Sommers, an NXT employee/representative, visited Vermont Soap on July 8, 2015. [DE 67-8 at 3, PG ID 691].

Ultimately, though the parties exchanged drafts of an asset purchase agreement, they never executed an asset purchase agreement and the negotiations fell apart. [DE 64-2, Sommers Deposition at 6, Pg ID 376; DE 64-3, Riccardi Deposition at 3-5, 7-8, Pg ID 380-82, 384-85].

Still, Vermont Soap did perform experiments and develop some products for NXT after NXT officials visited the Vermont Soap facility. In fact, Riccardi testified that the purpose of his initial visit to Vermont Soap's facility in July 2015 was both to

---

[2] "Crystal Ryan" is listed as the email sender for the address "crystal@herdguard.com." [DE 67-4 at 1, Pg ID 675]. But the emails from this address are signed as "Crystal Geis." [*Id.*]. For consistency, the Court will use Crystal Geis, but Crystal Ryan and Crystal Geis appear to be the same person.

conduct due diligence as part of the Herdguard acquisition negotiations and to seek a manufacturer for NXT products. [DE 68-6, Riccardi Deposition at 4-5, Pg ID 809-10]. Vermont Soap asserts that it conducted an experiment in an attempt to develop a foaming hand soap for NXT. [DE 67-8, Plesent Deposition at 8-9, Pg ID 696-97]. But this product was rejected because it did not work. [*Id.*].

Additionally, in October 2015, Vermont Soap was testing a deodorizing spray product for NXT that used diatomaceous earth. [*Id.* at 10-11, Pg ID 698-99]. But Larry Plesent, corporate designee of Vermont Soap, testified that experimentation on this product was ultimately discontinued because the product was too similar to the Herdguard formula for Bodyguard 360. [*Id.* at 10-13, Pg ID 698-701; *see also* DE 67-10, Emails].

Furthermore, Vermont Soap sold NXT an insect repellant product containing citronella marketed by NXT as "Ultimate Outdoor Protection." [DE 67-8 at 5, Pg ID 693]. According to Vermont Soap, this product was initially developed as "insect armor" or "camping spray" before Vermont Soap began doing business with Herdguard and was purchased off-shelf by NXT. [*Id.*]. Additionally, Plesent testified that before doing business with Herdguard, Vermont Soap did not have any product on the market that used diatomaceous earth as an ingredient. [*Id.* at 5-6, Pg ID 693-94].

Subsequently, in April 2016 Herdguard executed a dissolution agreement and the company dissolved, distributing all assets and assigns to Stewart. [DE 67-12]. In November 2016, Stewart filed this lawsuit in Garrard Circuit Court, which was removed to this Court in December 2016. [DE 1; DE 1-1].

Furthermore, in December 2016, Stewart executed an asset purchase agreement and sold Herdguard's assets to DCS Enterprises, LLC. [DE 67-13]. The purchase agreement excepted Stewart's rights to pursue this lawsuit. [*Id.* at 3-4, Pg ID 724-45]. But the principal of DCS Enterprises died soon after the asset purchase agreement was signed and Stewart elected not to enforce the asset purchase agreement, opting to release DCS from the purchase agreement and having DCS convey the rights and assets back to Stewart. [DE 67-2 at 17-22, 347-49, Pg ID 614-19, 658-60]. In deposition testimony, Stewart indicated that he planned on selling Bodyguard 360 again. [*Id.* at 64, Pg ID 661].

Finally, NXT and Vermont Soap stopped doing business with one another in 2017, after this lawsuit was filed. [DE 67-11 at 3, Pg ID 717; DE 67-8 at 13-14, Pg ID 701-02]. This lawsuit generally alleges that the agreements were violated the NDAs in two ways: (1) by reverse engineering the formula for Bodyguard 360 to make a similar product called "Ultimate Outdoor Protection," and (2) by doing business with each other to circumvent Herdguard's business relationships in violation of the agreements.

## II.  Legal Standard

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted).  The Court construes the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-moving party's favor.  *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

In a diversity action like this one, the Court must apply the substantive law of the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014).  Thus, "where a federal court is exercising jurisdiction solely because of the diversity of

citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Ultimately, to determine whether summary judgment should be granted here, the Court must look to state law and court decisions, as well as other relevant materials. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

## III. Analysis

### A. Voluntary Dismissal of Certain Counts

As an initial matter, Herdguard states that it wishes to dismiss certain counts against the defendants in this action. Specifically, "Herdguard voluntarily dismisses Counts IV, V, and VII against NXT and Riccardi. By dismissing Counts V and VII against Riccardi individually, Herdguard dismisses Riccardi as a defendant in this litigation." [DE 65, Herdguard Response at 2, Pg ID 437]. Additionally, as to Vermont Soap, "Herdguard does not object to the dismissal of Counts V and VII, in that they are subsumed in the claims for breach of contract." [DE 74, Herdguard Response at 1, Pg ID 1027].

Federal Rule of Civil Procedure 21 provides the proper procedural mechanism through which individual counts or claim may be dismissed against certain parties without disposing of the entire action. *See United States ex rel. Doe v. Preferred Care, Inc.*, 326 F.R.D. 462, 464 (E.D. Ky. 2018) (citing *Philip Carey*

8

*Manufacturing Company v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961)).

"On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. The rule applies where "no relief is demanded from one or more of the parties joined as defendants." *Letherer v. Alger Grp., LLC*, 328 F.3d 262, 267 (6th Cir. 2003). Normally, under the rule, Courts must consider prejudice to the nonmoving party. *See Wilkerson v. Brakebill,* No. 3:15-CV-435-TAV-CCS, 2017 WL 401212, at *2 (E.D. Tenn. Jan. 30, 2017); *Arnold v. Heyns*, No. 13–14137, 2015 WL 1131767, at *4 (E.D. Mich. Mar. 11, 2015). The inquiry overlaps with Rule 41 standards "as guidance in evaluating potential prejudice to the non-movant." *Wilkerson*, 2017 WL 401212, at *2. Courts determine whether the nonmoving party would suffer "plain legal prejudice" and consider: (1) defendant's effort and expense of preparation for trial; (2) excessive delay and lack of diligence on plaintiff's part in prosecuting the case; (3) insufficient explanation for the need for dismissal; and (4) whether a motion for summary judgment is pending." *Grover v. Eli Lily & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).

But here, the nonmoving parties support the dismissal of these claims. [DE 69, NXT's and Riccardi's Reply at 1, Pg ID 863; DE 75, Vermont Soap's Reply at 10, Pg ID 1055]. As a result, dismissal

of these counts is appropriate since all parties agree to the dismissal.  Thus, Counts IV, V, and VII of Herdguard's complaint against NXT and Riccardi are dismissed without prejudice. Additionally, Counts V and VII of Herdguard's complaint against Vermont Soap are dismissed without prejudice.

## B.    Breach of Contract Claims

After the voluntary dismissal of certain counts in Herdguard's complaint, this matter primarily amounts to an action for breach of contract.  Generally, Herdguard brings two principle claims in this lawsuit.  First, Herdguard claims that NXT and Vermont Soap breached provisions in the NDAs and confidentiality agreements by using Herdguard's confidential information to produce and manufacture a product using the formula for Bodyguard 360.  Second, Herdguard claims that NXT breached provisions of the Mutual NDA by engaging in a business relationship with Vermont Soap and by tortuously interfering with the business relationship between Herdguard and Vermont Soap.

As was previously discussed, each of the contracts contain a choice of law provision invoking the law of different states.  The Herdguard NDA [DE 64-6] is governed by Kentucky law.  The Mutual NDA [DE 64-5] is governed by New Jersey law.  The Vermont Soap confidentiality agreement [DE 67-5] is governed by Vermont law. Still, there is no apparent conflict of law issue.

The elements for breach of contract in all three states are similar. Generally, the essential elements to establish breach of contract include: (1) existence of a valid contract, including consideration; (2) breach or deficient performance of the contractual provisions; and (3) damages. *See, e.g.*, *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016); *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009); *Reynolds v. Chynoweth*, 34 A. 36, 37 (Vt. 1895).

Here, the parties do not dispute the validity of the NDAs and confidentiality agreement nor do they argue that the terms of the contracts are ambiguous. As a result, the inquiry here for the Court is simply whether a material dispute of genuine fact exists pertaining to whether the relevant contractual provisions were violated by either NXT or Vermont Soap.

**(1) Alleged Reverse Engineering of the Bodyguard 360 Formula and Production of Competing "Ultimate Outdoor Protection Product**

In the complaint, Herdguard alleges that the Ultimate Outdoor Protection insect repellant product is substantially the same as Herdguard's Bodyguard 360 product. Still, even when construing the facts in the light most favorable to Herdguard and drawing all reasonable inferences in Herdguard's favor, there is no genuine dispute of material fact on this claim.

First, according to Vermont Soap, the product that NXT marketed as Ultimate Outdoor Protection was produced well before

there was any business relationship between Herdguard and Vermont Soap. [DE 67-8 at 5, Pg ID 693]. Herdguard does not appear to dispute this fact. [DE 74 at 4, Pg ID 1030]. As a result, if the product NXT marketed as Ultimate Outdoor Protection existed before Herdguard and Vermont Soap had a business relationship, then it is impossible that Ultimate Outdoor Protection was created based on the Bodyguard 360 product formula.

Second, Ultimate Outdoor Protection does not appear to use diatomaceous earth, which is the main ingredient in Bodyguard 360. In fact, during his deposition, Stewart admitted that a product that does not contain diatomaceous earth could not be using the Bodyguard 360 formula. [DE 67-2 at 52, Pg ID 649]. Of course, at one time Stewart alleged that Ultimate Outdoor Protection does use diatomaceous earth, but Stewart's unsupported belief is insufficient to establish a genuine issue of material fact on this issue. [*See* DE 67-2 at 42, Pg ID 639].

Third, and lastly, contrary to Stewart's allegations, the undisputed facts indicate that Ultimate Outdoor Protection and Bodyguard 360 are dissimilar products with different uses. Bodyguard 360 was originally designed and marketed as a scent suppression product for deer hunters. [DE 67 at 1, 4, Pg ID 566, 569]. Alternatively, Ultimate Outdoor Protection was designed and marketed as an insect repellant containing citronella. [DE 67-8 at 5, Pg ID 693]. Stewart alleged generally that the products

perform the same way, but Stewart's assertion is contradicted by the evidence and common sense. [DE 67-2 at 43, Pg ID 640]. It is common knowledge that products containing citronella have a strong odor. As a result, any product containing citronella could not be said to perform the same way as a scent suppression product intended to mask the scent of deer hunters.

Ultimately, even when reading the facts in the light most favorable to Herdguard, there is insufficient evidence to demonstrate that Ultimate Outdoor Protection is made from the same formula or performs in the same manner as Bodyguard 360. As a result, NXT and Vermont Soap are entitled to summary judgment on any claim that they reverse engineered the Bodyguard 360 formula to create a competing product.

**(2) Vermont Soap and Alleged Violation of the Confidentiality Agreement**

Herdguard claims that Vermont Soap breached the confidentiality agreement by disclosing confidential information about the Bodyguard 360 formula to NXT. Even so, when viewing the facts in the light most favorable to Herdguard and resolving all reasonable inferences in Herdguard's favor, there is insufficient evidence to demonstrate that Vermont Soap disclosed confidential information about Bodyguard 360's formula to NXT representatives. Ultimately, unsupported and purely speculative allegations by Herdguard are insufficient to demonstrate a genuine issue of

material fact that would allow Herdguard's claims against Vermont Soap to move forward.

The confidentiality agreement between Herdguard and Vermont Soap provides in part that:

> 3. The Corporation and the Client each agree to maintain in confidence all Confidential Information received, each from the other, hereunder, and each party agrees not to disclose said Confidential Information to third parties without the prior written consent of the other party.
> 4. The Corporation and the Client each agree not to make use of the Confidential Information received each from the other, other than in relation to work which may be done under agreement between the parties without the prior written consent of the other party.

[DE 67-5 at 1, Pg ID 680]. The agreement defines "Confidential Information" as:

> 1) all written information disclosed by each party to the other, that is marked on its face as either confidential or proprietary, and 2) all oral information which, within 15 days after disclosure, is summarized and confirmed by the disclosing party to the recipient, in writing, as confidential and proprietary.

[*Id.*].

Herdguard alleges that NXT representative Riccardi "quizzed Vermont Soap on the proprietary formula created by Herdguard." [DE 1-1 at 7, Pg ID 14]. Additionally, Herdguard alleges that "[o]n or about July 15, 2015, NXT's agents contacted Herdguard by telephone" and "informed Herdguard that Vermont Soap knew the formula for Body Guard 360." [*Id.*].

But undisputed evidence in the record demonstrates that Herdguard disclosed the formula for Bodyguard 360 to Vermont Soap in an email on June 26, 2015. [DE 67-7 at 1, Pg ID 687]. Thus, Herdguard knew that Vermont Soap had the formula for Bodyguard 360.

Still, in its response to Vermont Soap's motion for summary judgment, Herdguard infers that Vermont Soap discussed the Bodyguard 360 formula with NXT representatives based on their assertion that Riccardi knew both the formula and the process or method of infusing ingredients to produce Bodyguard 360. Of course, Riccardi did testify that he gave Herdguard feedback on Bodyguard 360, saying that he had been told that the product is too simple and that it could be replicated. [DE 68-6 at 11-12, Pg ID 816-17]. As a result, Herdguard infers that it must be Vermont Soap that discussed the formula with Riccardi and told him that the formula could be replicated.

Even so, this inference is not reasonable, and the Court does not have to accept an allegation that is not supported by any objective evidence in the record. Herdguard has produced no factual evidence, other than unsupported and speculative allegations, that indicate that Vermont Soap discussed the Bodyguard 360 formula with NXT representatives. In fact, Vermont Soap vehemently denies discussing the formula with NXT representatives. When asked if Vermont Soap ever communicated the

formula for Bodyguard 360 to anyone from NXT Generation Pet, Larry Plesent responded, "Absolutely not." [DE 67-8 at 15, Pg ID 703]. Additionally, when Jason Riccardi was asked if Larry Plesent of Vermont Soap disclosed the formula for Bodyguard 360, Jason Riccardi responded, "No" and stated that Plesent and Riccardi only reviewed the process through which Vermont Soap provides drums of base soap to Herdguard for use in Bodyguard 360. [DE 67-3 at 9, Pg ID 672].

Of course, it may be true that someone discussed the Bodyguard 360 formula with Jason Riccardi but there is no evidence that demonstrates that it was a representative of Vermont Soap. For instance, it is possible that Riccardi discussed the formula with another NXT representative who then opined that the formula was too simple and could be replicated. Regardless, Herdguard has offered no objective evidence, other than an inference based on a hunch, that Vermont Soap discussed the Bodyguard 360 formula with NXT representatives.

Moreover, the fact that Vermont Soap performed an experiment on a product using diatomaceous earth for NXT does not establish that Vermont Soap disclosed the formula for bodyguard 360 to NXT or otherwise breached the confidentiality agreement. It is undisputed that diatomaceous earth is a well-known substance that is used to produce a variety of scent suppression products, including kitty litter. Here, it appears that Vermont Soap did

the right thing and ceased experimentation and development of the product using diatomaceous earth when it realized that the experimental product would be too close to the Bodyguard 360 formula. Still, it appears to be undisputed that Vermont Soap never developed or marketed another product using diatomaceous earth. Additionally, there is no objective evidence to suggest that Vermont Soap used or revealed the Herdguard formula during experimentation for NXT.

Finally, Herdguard appears to infer that Vermont Soap played some role in the failed negotiations between Herdguard and NXT. Still, Riccardi has provided alternative reasons for the failed negotiations, namely because a product using diatomaceous earth cannot be certified as an organic product. Ultimately, since there is insufficient evidence to create a genuine issue of material fact regarding Vermont Soap's alleged disclosure of Herdguard's confidential information, there is equally insufficient evidence to support the notion that Vermont Soap played a role in the failed negotiations between Herdguard and NXT.

In sum, even when viewing the evidence in the light most favorable to Herdguard, there is insufficient evidence to demonstrate that Vermont Soap disclosed Herdguard's confidential information in violation of the confidentiality agreement. Herdguard supports its claim based on pure speculation and draws inferences that are unreasonable based on the objective evidence

presented. Moreover, since Herdguard has failed to present sufficient evidence to create a genuine issue of material fact regarding Vermont Soap's breach of the agreement, Vermont Soap is entitled to summary judgment on claims for punitive damages and attorney's fees. As a result, Vermont Soap's is entitled to summary judgment and Herdguard's motion for summary judgment against Vermont Soap is denied.

**(3)  NXT and Alleged Violation of the Mutual NDA's Non-Circumvention Clause**

Herdguard alleges that NXT breached the Mutual NDA's non-circumvention clause by doing business directly with a manufactuer/supplier. Herdguard and NXT argue that they are entitled to summary judgment on this breach of contract claim.

The Mutual NDA[3] states:

> 7. NON CIRCUMVENTION At any time after the execution of this nondisclosure agreement, it is expressly agreed that the identities of any individual or entity and any other third parties (including, without limitation, suppliers, customers, financial sources, manufacturers and consultants) discussed and made available by the Disclosing Party in respect of the Purpose and any related business opportunity shall constitute Confidential Information and the Recipient or any Group company or associated entity or individual shall not (without the prior written consent of, or having entered into a commission agreement with, the Disclosing Party):

---

[3] Herdguard appears to only discuss violations of the Mutual NDA, which was governed by New Jersey law. As a result, the Court only considers the terms of the Mutual NDA for the purposes of the non-circumvention clause dispute.

18

       a. directly or indirectly initiate, solicit, negotiate, contract or enter into any business transactions, agreements or undertakings with any such third party identified or introduced by the Disclosing Party;

or

       b. seek to by-pass, compete, avoid or circumvent the Disclosing Party from any business opportunity that relates to the Purpose by utilizing any Confidential Information or by otherwise exploiting or deriving any benefit from the Confidential Information.

[De 64-5 at 3, Pg ID 392]. Still, the Mutual NDA excludes information that "was in a party's possession prior to its receipt from the other party" or that "was or becomes publicly known through no breach of confidential obligation by the receiving party." [*Id*. at 2, Pg ID 391].

**a.   Alleged Breach of Non-Circumvention Clause**

It is undisputed that NXT had a business relationship with Vermont Soap after beginning negotiations with Herdguard. Vermont Soap researched and manufactured products for NXT from 2015 until 2017. In fact, as was previously mentioned, Riccardi testified that he visited Vermont Soap's manufacturing facility in July 2015 to conduct due diligence as part of the potential acquisition of Herdguard and to find a manufacturer for NXT products.

Still, NXT claims that it did not violate the provisions of the Mutual NDA by engaging in a business relationship with Vermont Soap. Instead, NXT claims that the identity of Vermont Soap was

not confidential information protected by the Mutual NDA because Vermont Soap was known to NXT before NXT signed the Mutual NDA with Herdguard. In her deposition, NXT representative Beth Sommers testified that she became aware that Vermont Soap was a potential vendor by conducting an internet search sometime in March 2015. [DE 64-2 at 3, Pg ID 373]. Still, Sommers testified that she had not had any contact with Vermont Soap before negotiations with Herdguard. [*Id.*]. Additionally, Riccardi testified that he had not scheduled a visit to Vermont Soap before signing the nondisclosure agreements with Herdguard. [DE 65-6 at 5, Pg ID 498].

Even so, it is possible that NXT discovered information about Vermont Soap prior to entering into the Mutual NDA. Herdguard's owner Kenneth Stewart acknowledged that anyone could discover the existence of Vermont soap through an internet search. [DE 64-1 at 21-22, Pg ID 355-56]. Furthermore, in his deposition Stewart admitted that sometimes Herdguard would disclose Vermont Soap as the manufacturer of Herdguard's soaps as a marketing tool. [DE 64 at 36, Pg ID 370]. Thus, one could find that NXT had discovered sufficient information about Vermont Soap through public information to exclude the identity of Vermont Soap from confidential information protected under the Mutual NDA.

Still, the fact that NXT representatives simply knew that Vermont Soap existed may be insufficient to exclude Vermont Soap's

identity as confidential information under the Mutual NDA. Beth Sommers may have known that Vermont Soap was one of many potential manufacturers of products that NXT hoped to produce. Still, it does not appear that NXT knew that Vermont Soap was Herdguard's manufacturer before engaging in negotiations with Herdguard. For instance, on June 15, 2015, Riccardi sent an email to Crystal Geis at Herdguard asking for a list of everyone who knew the Bodyguard 360 formula, including third party manufacturers. [DE 68-2 at 4, Pg ID 774]. In the same email, Riccardi asked if the product manufacturer was near the Herdguard facility. [*Id.*]. Thus, NXT representatives may have known that Vermont Soap existed as a corporate entity that was a potential business partner, but it is unclear whether NXT representatives knew that Vermont Soap was a third-party manufacturer for Herdguard or whether NXT representatives were aware of the potential business opportunity presented by Vermont Soap.

Here, a genuine dispute of material fact exists regarding whether NXT knew or publicly acquired information about Vermont Soap before entering into the Mutual NDA with Herdguard. Thus, a reasonable jury could find that NXT representatives discovered sufficient information about business opportunities at Vermont Soap such that the identity of Vermont Soap as Herdguard's manufacturer was not confidential information protected by the Mutual NDA. Alternatively, a reasonable jury could also find that

NXT representatives had no prior contact with Vermont Soap and only discovered the potential business opportunity at Vermont Soap through information disclosed by Herdguard. Ultimately, whether the identity of Vermont Soap as a third-party manufacturer constituted confidential information, preventing NXT from circumventing the business relationship between Herdguard and Vermont Soap, is a disputed question of material fact that is best resolved by a jury. As a result, summary judgment for NXT and Herdguard on this issue is denied.

**b. Actual Damages and Attorney's Fees**

NXT also argues that Herdguard's claim for violation of the non-circumvention clause must fail because Herdguard has not demonstrated actual damages. In response, Herdguard claims that it has suffered damages that total at least $144,000 in lost sales. [DE 65 at 11, Pg ID 446]. Of course, just because Herdguard says it had suffered damages does not make it true. Still, Herdguard has provided sufficient information, in the form of sales receipts and invoices filed as exhibits under seal [DE 66-1], to create a factual issue on damages that is best resolved by the jury.

Furthermore, NXT argues that Herdguard is not entitled to attorney's fees because Herdguard has failed to demonstrate that it can recover on any of its claims. But the Court has found that there is a genuine issue of material fact pertaining to whether NXT violated the non-circumvention clause of the Mutual NDA. As

a result, the issue of attorney's fees as damages is also best left to the jury.

**c.    Punitive Damages**

NXT also alleges that Herdguard may not recover punitive damages because punitive damages are not recoverable in a breach of contract claim under Kentucky law. *See Gen. Accident Fire & Life Assurance Corp. v. Judd*, 400 S.W.2d 685, 688 (Ky. 1966) ("[P]unitive damages ordinarily are not recoverable for a breach of contract."). That may by true under the Herdguard NDA, but the Mutual NDA is governed by New Jersey law.

Still, New Jersey law appears to be in accord with Kentucky law on the availability of punitive damages in a breach of contract action. In New Jersey, "[w]ith rare exception, punitive damages are not available in an action for a breach of contract." *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988). "Even where the breach is 'malicious and unjustified,' punitive damages are not allowed in actions upon 'mere private contracts.'" *Kurnik v. Cooper Health Sys.*, 2008 WL 2829963, at *15 (N.J. Super. Ct. App. Div. July 24, 2008) (citing *Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805, 812 (N.J. Super. Ct. App. Div. 1976)).

New Jersey courts have recognized some exceptions to the general rule barring punitive damages in breach of contract actions "where the unusual relationship between the parties reflects a breach of trust beyond the mere breach of a commercial contract."

*Sandler*, 358 A.2d at 812. Such actions include actions for breach of a contract of marriage, actions against public utilities, and actions involving a fiduciary relationship between a seller and a real estate broker. *Id.* Finally, New Jersey courts have recognized that an aggravated set of facts may make an award of punitive damages appropriate regardless of the form of the contract. *Id.* at 813.

Here, punitive damages are unavailable to Herdguard in this breach of contract action under both Kentucky and New Jersey law. This does not appear to be a case where aggravating factors or a special relationship between the parties make the availability of punitive damages appropriate. As a result, NXT is entitled to summary judgment on Herdguard's claim for punitive damages.

## C. Alleged Tortious Interference with a Business Relationship by NXT

Finally, Herdguard asserts that NXT tortuously interfered with the business relationship between Vermont Soap and Herdguard. To prove tortious interference with a prospective business relationship under Kentucky law, Herdguard must prove: "(1) the existence of a valid business relationship or expectancy; (2) that [NXT] was aware of this relationship or expectancy; (3) that [NXT] intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages." *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d

1, 6 (Ky. Ct. App. 2012) (citing *Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.*, 242 F. Supp. 2d 438, 450 (W.D. Ky. 2003)). The analysis turns mostly on motive and the "party seeking recovery must show malice or some significantly wrongful conduct." *National Collegiate Athletic Ass'n By and Through Bellarmine College v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988).

NXT argues that Herdguard has implicitly conceded that it has no valid claim for tortious interference with a business relationship because Herdguard has not provided any argument or evidence to support its claim. NXT is correct. Herdguard's response to NXT's motion for summary judgment [DE 65] fails to mention tortious interference. Additionally, Herdguard's partial motion for summary judgment [DE 68] only mentions tortious interference once in the introductory paragraph. Herdguard's failure to provide any argumentation or facts in support of its tortious interference claim, paired with Herdguard's assertion that "[t]his is a simple matter of breach of contract," indicates that there is no genuine dispute of material fact on the issue of tortious interference.

Of course, Herdguard did state a general claim for breach of contract in its complaint [DE 1-1] and has generally alleged that NXT willfully and maliciously used confidential information in an attempt to produce products to compete with Herdguard [DE 65 at

11-12, Pg ID 446-47].  Still, these bare allegations fail to raise a genuine issue of material fact on tortious interference with a business relationship.  Herdguard has not provided any factual information, other than bare assertions, pertaining to the motives of NXT representatives.  As a result, there is no genuine dispute of material fact on the claim of tortious interference and NXT is entitled to summary judgment on this issue.

## IV.  Conclusion

In sum, there is no genuine issue of material fact on Herdguard's claim that NXT and Vermont Soap reverse engineered or used the Bodyguard 360 formula to produce a similar product called Ultimate Outdoor Protection.  Additionally, there is no genuine dispute of material fact pertaining to whether Vermont Soap breached the confidentiality agreement.  Moreover, there is no genuine issue of material fact on Herdguard's claim for tortious interference with a business relationship against NXT.  Still, there is a genuine dispute about what NXT knew about Vermont Soap prior to signing the NDAs with Herdguard.  Thus, whether the existence of Vermont Soap as a manufacturer for Herdguard constitutes confidential information that was protected by the Mutual NDA, prohibiting NXT from engaging in a business relationship with Vermont Soap, is a question best resolved by the jury.  Regardless, punitive damages are not available to Herdguard

on the breach of contract claim against NXT. Accordingly, **IT IS ORDERED** as follows:

(1)  Herdguard's voluntary dismissal of Counts IV, V, and VII against NXT and Riccardi is **GRANTED** and Counts IV, V, and VII against NXT and Riccardi are **DISMISSED WITHOUT PREJUDICE**. As a result, Jason Riccardi is voluntarily dismissed as a Defendant in this matter.

(2)  Herdguard's voluntary dismissal of Counts V and VII against Vermont Soap is **GRANTED** and Counts V and VII against Vermont Soap are **DISMISSED WITHOUT PREJUDICE.**

(3)  NXT's motion for summary judgment [DE 64] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted for NXT on Herdguard's breach of contract claim alleging reverse engineering of the formula for Bodyguard 360 (Count I, ¶ 45), on Herdguard's claim for tortious interference with a business relationship (Count VI), and on Herdguard's claim for punitive damages (Count VIII). Summary judgment is denied for NXT on Herdguard's claim for breach of contract due to violation of the Mutual NDA's non-circumvention clause (Count I, ¶ 44) and on Herdguard's claim for attorney's fees (Count IX).

(4)  Vermont Soap's motion for summary judgment [DE 67] is **GRANTED**. Vermont Soap is granted summary judgment on Counts II, VIII, and IX. As a result, Vermont Soap is dismissed as a Defendant in this matter.

(5)  Herdguard's partial motion for summary judgment [DE 68]

is **DENIED**.

This the 5th day of February, 2019.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge