UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| HERDGUARD, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. |
| v. ) | 5:16-cv-468-JMH-EBA |
| ) | |
| NXT GENERATION PET, INC., et ) | **MEMORANDUM OPINION** |
| al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*

Recently, the Court entered a memorandum opinion and order in this matter addressing the parties' cross motions for summary judgment. [DE 90]. As a result, only one breach of contract claim remains. Now, Herdguard has moved for reconsideration and NXT has filed a supplemental motion for summary judgment.

First, Plaintiff Herdguard has moved for reconsideration of the Court's memorandum opinion and order, claiming that Defendant NXT Generation Pet violated the non-circumvention clause in the Mutual Nondisclosure Agreement ("Mutual NDA") by doing business with Herdguard's supplier, Vermont Soap. [De 93]. NXT has not responded to Herdguard's motion to reconsider.

Second, NXT has filed a supplemental motion for summary judgment, claiming that Herdguard's breach of contract claim may not survive because Herdguard has failed to present evidence that it suffered actual damages. [DE 106]. Herdguard has responded in

1

opposition to NXT's supplemental motion for summary judgment. [DE 107].

The Court provided a detailed account of the relevant procedural and factual background in its previous memorandum opinion and order. Those facts need not be repeated here. At the initial pretrial conference, Magistrate Judge Atkins set a briefing schedule requiring that pretrial motions be filed no later than Friday, February 15, 2019, and that responses be filed no later than Friday, February 22, 2019. [DE 92]. As a result, these motions are ripe for review.

## I. Standard of Review and Applicable Law

In a diversity action like this one, the Court must apply the substantive law of the forum state and federal procedural law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996); *Hanna v. Plumer*, 380 U.S. 460, 465-66 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938); *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014). Thus, "where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945). Ultimately, to determine whether summary judgment should be granted here, the Court must look to state law

and court decisions, as well as other relevant materials. *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

Rule 54(b) of the Federal Rules of Civil Procedure provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Thus, this rule, by its own terms, allows a district court to revise its orders at any time before entry of judgment adjudicating all claims in the action.

Summary judgment is appropriate only when no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 825 (6th Cir. 2013) (internal quotations omitted). The Court construes the facts in the light most favorable to the nonmoving party and draws all

reasonable inferences in the non-moving party's favor. *See Anderson*, 477 U.S. at 248; *Hamilton Cty. Educ. Ass'n v. Hamilton Cty. Bd. of Educ.*, 822 F.3d 831, 835 (6th Cir. 2016).

## II. Analysis

### A. Herdguard's Motion to Reconsider

First, Herdguard asks the Court to reconsider its previous ruling that a genuine question of material fact exists as to whether NXT violated the non-circumvention clause in the Mutual NDA. [DE 93]. While NXT has not responded to the current motion to reconsider, NXT previously argued that the identity of Vermont Soap did not constitute Confidential Information under the Mutual NDA because the identity of Vermont Soap as a potential manufacturer was known to NXT before NXT entered into the Mutual NDA with Herdguard.

The Mutual NDA states,

> 7. NON CIRCUMVENTION At any time after the execution of this nondisclosure agreement, it is expressly agreed that the identities of any individual or entity and any other third parties (including, without limitation, suppliers, customers, financial sources, manufacturers and consultants) discussed and made available by the Disclosing Party in respect of the Purpose and any related business opportunity shall constitute Confidential Information and the Recipient or any Group company or associated entity or individual shall not (without the prior written consent of, or having entered into a commission agreement with, the Disclosing Party):
>
> > a. directly or indirectly initiate, solicit, negotiate, contract or enter into any business transactions, agreements or undertakings with any

>     such third party identified or introduced by the
>     Disclosing Party;
>
>     or
>
>     b. seek to by-pass, compete, avoid or
>     circumvent the Disclosing Party from any business
>     opportunity that relates to the Purpose by
>     utilizing any Confidential Information or by
>     otherwise exploiting or deriving any benefit from
>     the Confidential Information.

[De 64-5 at 3, Pg ID 392]. Thus, the non-circumvention provision expressly includes the identity of any entities or third parties, including suppliers or manufacturers, in the definition of "Confidential Information."

Still, the Mutual NDA defines the term "Confidential Information" and expressly excludes

> "Confidential Information which: (a) was in a party's possession prior to its receipt from the other party, or was received by a party in good faith from a third party not subject to a confidential obligation; [or] (b) was or become publicly known through no breach of confidential obligation by the receiving party . . . ."

[DE 64-5 at 2, Pg ID 391].

After close review of Herdguard's motion to reconsider [DE 93] and reply [DE 77], Herdguard is correct that the identities of third-party suppliers and manufacturers were expressly included in the definition of Confidential Information in the plain language of the Mutual NDA's non-circumvention provision. As such, Herdguard claims that the Court's previous finding, that a material question of fact exists as to whether the identity of Vermont Soap

5

as a third-party manufacturer constituted confidential information, preventing NXT from circumventing the business relationship between Herdguard and Vermont Soap, is a "mis-reading of the text of the Mutual NDA." [DE 93 at 3-4, Pg ID 1221-22]. But Herdguard's interpretation reads the Confidential Information exclusion provision out of the Mutual NDA.

Ultimately, Herdguard is correct that as a general principle of contract interpretation, courts look to the intentions of the parties and that specific contractual provisions control over general provisions. Thus, the identity of third-party manufacturers and suppliers is expressly included in the definition of Confidential Information. Still, the plain language of the Mutual NDA specifically and expressly excludes information that was previously known to a party from the definition of Confidential Information. As such, the identity of Vermont Soap would not constitute confidential information if NXT knew of the identity of Vermont Soap as a potential manufacturer prior to entering into the Mutual NDA with Herdguard. Alternatively, if NXT discovered that Vermont Soap was a potential manufacturer during the negotiations with Herdguard, then the identity of Vermont Soap would likely constitute confidential information.

As the Court previously noted, NXT representative Beth Sommers testified that she became aware that Vermont Soap was a potential vendor by conducting an internet search sometime in March

2015, approximately two months before the Mutual NDA was signed by the parties. [DE 64-2 at 3, Pg ID 373]. Still, Sommers testified that she had not had any contact with Vermont Soap before negotiations with Herdguard. [*Id.*]. Additionally, Riccardi testified that he had not scheduled a visit to Vermont Soap before signing the nondisclosure agreements with Herdguard. [DE 65-6 at 5, Pg ID 498]. As a result, one could find that even if NXT knew that Vermont Soap existed as a company that the lack of contact between NXT representatives and Vermont Soap indicates that NXT found out about potential business opportunities with Vermont Soap only through negotiations with Herdguard.

Even so, Herdguard's owner Kenneth Stewart acknowledged that anyone could discover the existence of Vermont soap through an internet search. [DE 64-1 at 21-22, Pg ID 355-56]. Thus, one could find that NXT had discovered enough information about Vermont Soap through public sources to exclude the identity of Vermont Soap from confidential information protected under the Mutual NDA.

Ultimately, it is unclear what NXT representatives knew about potential business opportunities with Vermont Soap. On one hand, a reasonable jury could find that Beth Sommers's internet search provided sufficient information that would exclude the identity of Vermont Soap from the definition of Confidential Information under the Mutual NDA. On the other hand, a reasonable jury could also find that NXT merely knew that Vermont Soap existed as a company

7

and that information is insufficient to exclude the identity of Vermont Soap from the definition of Confidential Information under the Mutual NDA. As a result, whether the identity of Vermont Soap as a third-party manufacturer constituted confidential information, preventing NXT from circumventing the business relationship between Herdguard and Vermont Soap, is a disputed question of material fact that is best resolved by a jury and Herdguard's motion to reconsider [DE 93] is **DENIED**.

**B.   NXT's Supplemental Motion for Summary Judgment**

Second, NXT has filed a supplemental motion for summary judgment, claiming that Herdguard has failed to provide any proof of actual damages and that Section 7.1 of the Mutual NDA constitutes an unenforceable liquidated damages clause. [DE 106]. Herdguard responded in opposition, claiming that the liquidated damages provision in the Mutual NDA is enforceable and that any ambiguities that exist should be resolved against the drafter. [DE 107].

Section 7.1 of the Mutual NDA states,

> The recipient covenants that any financial gain made by it, or any associated party, from a breach of [the non-circumvention] clause shall be held on trust for the benefit of the Disclosing Party and then be transferred to a nominated account of the Disclosing Party, until which time such outstanding amount shall incur interest at the rate of 4% per annum. Such interest shall accrue on a daily basis from the due date until actual payment of the overdue amount, whether before or after judgment and the Recipient shall pay the interest together with the overdue amount.

8

[DE 64-5 at 3, Pg ID 392]. Thus, Herdguard is correct that the parties agreed to the above liquidated damages provision.

Initially, NXT claims that Herdguard has failed to show any actual damages because it has failed to produce evidence of financial gain made by NXT as a result of the alleged breach of the non-circumvention clause. Previously, the Court understood the $144,000 in damages claimed by Herdguard as Herdguard's lost sales. Now, based on clarification in the parties' briefing, the Court understands that the $144,000 represents the total amount of sales between Herdguard and Vermont Soap between September 2015 to December 2017.

Now, NXT claims that "[t]here is simply no evidence in the record of whether, and to what extent, NXT profited from its dealings with Vermont Soap." [DE 106-1 at 8, Pg ID 1392]. Still, it appears that Herdguard is claiming that the roughly $144,000 in total sales between NXT and Vermont Soap constitutes the financial gain of NXT as a result of allegedly violating the non-circumvention clause in the Mutual NDA. Of course, NXT's point is well taken that this amount of total sales may not be a proper calculation of "financial gain." But this does not conclusively demonstrate that the Plaintiffs have provided no evidence of damages.

At the summary judgment stage, the facts are viewed in the light most favorable to the nonmoving party. While Herdguard's claimed amount of damages may not be the amount of damages that constitute NXT's "financial gain," NXT has failed to show an absence of damages that would justify summary judgment in its favor. It is undisputed that NXT did business with Vermont Soap from September 2015 to December 2017. Thus, assuming for the sake of argument that Herdguard can prove that NXT violated the non-circumvention clause in the Mutual NDA, it is inconceivable that NXT received no "financial gain" from its two-year business relationship with Vermont Soap. As a result, there is a genuine issue of material fact regarding the amount of actual damages suffered by Herdguard.

Additionally, NXT appears to argue that the term "financial gain" is ambiguous because it is not defined by the Mutual NDA. Still, the term financial gain can be interpreted by its plain meaning and any ambiguity in the contract is to be resolved against NXT, the drafting party.

Finally, NXT also argues that the liquidated damages provision in the Mutual NDA is unenforceable under New Jersey law.[1] NXT's position is curious because it appears that NXT is responsible for drafting the Mutual NDA. Still, NXT argues that

---

[1] By its own terms, the Mutual NDA is governed by the substantive law of the state of New Jersey.

the amount of the amount of actual harm suffered by Herdguard is disproportionate to the amount of damages outlined in the liquidated damages clause, making the liquidated damages provision an unenforceable penalty provision.

Under New Jersey law, liquidated damages provisions are generally enforceable so long as the liquidated damages clause is reasonable under the totality of the circumstances. *See, e.g., MetLife Capital Fin. Corp. v. Washington Ave. Assocs. L.P.*, 732 A.2d 493, 499-500 (N.J. 1999). "[L]iquidated damages provisions in a commercial contract between sophisticated parties are presumptively reasonable and the party challenging the clause bears the burden of proving its unreasonableness." *Id.* at 499.

Here, NXT has failed to meet its burden of establishing that the liquidated damages provision in the Mutual NDA is unreasonable. Courts have found liquidated damages provisions with late fees of four to five percent to be reasonable in similar commercial contracts. *See id.* at 499-502 (citing cases). In this instance, the liquidated damages provision is based on the amount of financial gain of a breaching party, not a fixed amount. Additionally, the four percent per annum interest charge is similar to late penalties that other courts have upheld.

In sum, whether $144,000 represents the appropriate amount of financial gain under the liquidated damages provision may be disputed. Still, it does not indicate that the liquidated damages

11

provision in the Mutual NDA is unreasonable based on the totality of the circumstances. There may be a dispute about the proper amount of "financial gain," but that does not make the liquidated damages provision unreasonable. Ultimately, there is a genuine issue of material fact on the amount of damages suffered by Herdguard and as result NXT's motion for summary judgment [DE 106] is **DENIED**.

### III. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED** as follows:

(1) Herdguard's motion to reconsider [DE 93] is **DENIED**; and

(2) NXT's Supplemental motion for summary judgment [DE 106] is **DENIED**.

This the 25th day of February, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge