UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| HERDGUARD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| v. | ) | 5:16-cv-468-JMH-EBA |
| | ) | |
| NXT GENERATION PET, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\* \* \*

This matter is before the Court upon the motion of Plaintiff Herdguard, LLC, for attorneys' fees. [DE 119]. Herdguard argues that they are contractually entitled to attorneys' fees as the prevailing party in this action for breach of contract.

In response, Defendant NXT Generation Pet, Inc., does not dispute that Herdguard is contractually entitled to attorneys' fees. Instead, NXT argues that Herdguard has failed to meet its burden of proving the amount of attorneys' fees to which it is entitled. [DE 122].

Herdguard replied and provided unredacted invoices as proof of its attorneys' fees. [DE 123]. Subsequently, the Court allowed additional briefing considering the unredacted invoices were filed in Herdguard's reply in support of the motion. [DE 124].

Having reviewed the motions, supplemental briefing, and unredacted invoices, Herdguard's motion for attorneys' fees [DE 19] is **GRANTED IN PART** and **DENIED IN PART**. Since the Mutual NDA

is governed by New Jersey law, the substantive law of the state of New Jersey should govern the calculation of attorneys' fees and costs in this action. Herdguard, as the prevailing party in this litigation, is contractually entitled to reasonable attorneys' fees and costs related to this action. But some of Herdguard's requested fees and costs must be deducted for various reasons. Thus, Herdguard is entitled to $48,562.50 in attorneys' fees and $3,758.71 in costs, for a total sum of $52,321.21.

## I. Procedural Background

Plaintiff Herdguard, LLC, filed this action for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, tortious interference with business relationships, and civil conspiracy against five Defendants in Garrard Circuit Court. [DE 1-1]. The initial complaint sought actual damages, punitive damages, and attorneys' fees. The action was removed to this Court based on diversity jurisdiction. [DE 1].

Through various voluntary dismissals and grants of summary judgment, the action was reduced to a single breach of contract count against Defendant NXT Generation Pet, Inc. [*See* DE 18, Order (Dismissing claims against Eco-Shell); DE 25, Order (Dismissing claims against Pura Naturals); DE 90, Memorandum Opinion and Order (Dismissing all claims against Jason Riccardi, dismissing certain counts against Vermont Soap and granting Vermont Soap's motion for summary judgment, and granting in part and denying in part NXT's

2

motion for summary judgment)].  As a result, the only remaining claim was Herdguard's breach of contract claim against NXT arising from alleged violation of the non-circumvention clause of the non-disclosure agreements ("NDAs").  [*See* DE 90].

A trial by jury on the remaining breach of contract dispute was held on March 26, 2019, and March 27, 2019.  [DE 112; DE 114]. The jury returned a verdict for Herdguard and awarded $120,000 in damages to Herdguard.  [DE 117].

Now, Herdguard claims that it is contractually entitled to attorneys' fees from NXT as the prevailing party in this action. [DE 119].  The Mutual NDA provides that "[i]n the event of any legal proceeding between the parties arising out of or related to this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief awarded or granted, its costs and expenses (including reasonable attorneys' fees and expert witness' fees) incurred in any such proceeding."  [DE 68-14 at 2, Pg ID 859].  The Mutual NDA is governed by New Jersey law.  [*Id.*].

NXT does not dispute that Herdguard is entitled to fees.  The only dispute is whether Herdguard has provided sufficient proof of its requested attorneys' fees in this action.

## II.  Legal Standard and Governing Law

The parties contend that federal common law provides the appropriate method for calculating attorneys' fees in this matter. This understanding is supported by an unpublished Sixth Circuit

decision. *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 328 n. 6 (6th Cir. 2008). But "*Graceland* conflicts with a longstanding principle in Sixth Circuit law: State substantive law governs contract interpretation." *In re Black Diamond Min. Co., LLC*, No. 13-cv-125-ART, 2014 WL 4104101, at *3 (E.D. Ky. Aug. 6, 2014) (citing *In re Martin*, 761 F.2d 1163, 1167–68 (6th Cir. 1985)). The Mutual NDA at issue in this action is governed by New Jersey law.

Since "[c]ontract interpretation is—and traditionally has been—an issue of state law," *In re Black Diamond*, 2014 WL 4104101 at *3 (citing *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807 (6th Cir. 2004)), the better approach is to apply substantive New Jersey state law rules for calculating attorneys' fees. Thus, in this case, the substantive state law of New Jersey should provide the appropriate method for calculating attorneys' fees since the Mutual NDA is governed by New Jersey law.

### III. Analysis

New Jersey generally follows the "American Rule," under which litigants must bear their own litigation costs and attorneys' fees. *Innes v. Marzano-Lesnevich*, 136 A.3d 108, 113 (N.J. 2016). But New Jersey law also allow parties to contractually agree to shift the costs and fees of litigation to the prevailing party in a lawsuit. *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 427-28 (N.J. 2009) ("In general, New Jersey disfavors the shifting of attorneys'

4

fees. . . . However, a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." (internal citations and quotations omitted)). This Court has broad discretion in awarding attorneys' fees under a valid contractual authorization for an award of such fees. *See Graceland Fruit*, 320 F. App'x at 325 (quoting *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004)).

## A. Calculation of Attorneys' Fees

Under New Jersey law, a two-step approach is used to determine a reasonable dollar amount of attorneys' fees. First, the Court must determine "whether the party seeking the fee prevailed in the litigation." *Litton Indus., Inc.*, 982 A.2d at 386. Second, the Court must calculate the lodestar, "which is that number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." *Id.*

New Jersey Rule of Professional Conduct 1.5(a) provides factors to be considered in determining the reasonableness of attorneys' fees. Those factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.

*Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 447-48 (N.J. 2004) (quoting RPC 1.5(a)).

Even so, "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984); *accord Rendine v. Pantzer*, 661 A.2d 1202, 1227 (N.J. 1995). Otherwise, this Court cannot determine the appropriate amount of attorneys' fees and costs in the action.

**(1) Herdguard is a Prevailing Party**

In the present case, Herdguard is entitled to an award of attorneys' fees and costs based on the terms of the Mutual NDA as the prevailing party. The Mutual NDA provides that "[i]n the event of any legal proceeding between the parties arising out of or relating to this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief awarded or granted, its costs and expenses (including reasonable attorneys' and expert

6

witness' fees) incurred in any such proceeding." [DE 68-14 at 2, Pg ID 859]. Thus, the Mutual NDA clearly provides that, in the event of litigation arising out of the Mutual NDA, the prevailing party is entitled to recover costs and fees.

**(2) Calculating the Lodestar**

To calculate the lodestar amount, the Court must multiply the number of compensable hours by a reasonable hourly rate. In order to do that, the Court must first determine a reasonable hourly rate. Then, the Court must determine the appropriate amount of compensable hours expended by Herdguard in this matter.

**a. Reasonable Hourly Rate**

First, the Court must determine a reasonable hourly rate for the services provided in this action. To that end, the Court must consider the factors in New Jersey Rule of Professional Conduct 1.5(a).[1]

Initially, the Court reiterates that counsel for Herdguard reached a favorable outcome in this action, a $120,000 award after a jury trial. This litigation included multiple depositions, dispositive motions, and a jury trial. While the primary legal claim was for breach of contract, this action involved complex consideration of multiple contractual documents, correspondence between various individuals and entities, and the application of

---

[1] The Court acknowledges that the individual factors are not considered in the same order as they are presented in RPC 1.5(a).

multiple states' laws. This required a significant amount of time and labor on behalf of Herdguard's attorneys. Moreover, counsel for Herdguard litigated the matter from beginning to end, maintaining an attorney-client relationship for approximately 2.5 years. Still, there is no evidence to suggest that the client was aware of the apparent likelihood that this case would preclude counsel from employment in other cases.

Next, the Court is instructed to consider whether the fee was fixed or contingent. In this matter, the attorneys for Herdguard agreed to work on a hybrid contingency fee agreement, which allowed for discounted hourly rates in exchange for a 25% contingency award. [*See* DE 126 at 9, Pg ID 1617]. As such, Herdguard discounted many of the invoices by 50-60%. [*See id.*]. In some cases, New Jersey law may allow for a fee enhancement if the matter was taken on a contingency fee basis, since the attorney taking the case accepted the risk of recovering nothing if a successful outcome was not achieved.

Here, the Court may consider the risks involved with taking the matter on a contingency fee basis and consider that factor when determining a reasonable attorney fee. Still, since a hybrid contingency fee was used, the risk is minimized because counsel would have recovered some fees if they were unsuccessful in this action.

But that raises another question. How should the Court handle the contingency fee requested by Herdguard? The Court could base the reasonable fee in this matter off the discounted rate of attorneys' fees and award the full requested contingency fee to Herdguard. The better approach, however, is to use a reasonable, non-discounted rate to determine the appropriate amount of attorneys' fees and disregard the lump-sum contingency fee requested by Herdguard. This is the case for two reasons.

One, it appears that the contingency fee discounts are inconsistent across invoices, which makes it difficult for the Court to determine if the reported time is reasonable. This is especially true considering that certain redactions and deductions are required.

Two, counsel for Herdguard has submitted information about the normal hourly rate charged for services of this nature. Thus, if the Court calculates a reasonable fee based on the full, non-discounted rate for attorneys' services, it will ensure that the attorneys are fairly compensated at a reasonable rate for the time expended in this action, without requiring the Court to award the requested contingency fee amount. This method ensures a more accurate calculation of the reasonable fee for the services provided.

As such, the Court will not award the $24,000 contingency fee amount requested in invoice 7951. [*See* DE 123-2 at 31, Pg ID

1581].  Instead, the Court will determine a reasonable fee based on the rate proposed by counsel, the prevailing market rate for similar services, and the factors in RPC 1.5(a).

Moreover, the Court must consider the reasonableness of the rates proposed by counsel in support of the fee application.  A complicating factor here is that multiple attorneys—who charge different rates—worked on this case for Herdguard.  Herdguard asserts that "[t]he usual billing rates of Regard Law Group [] are $350 for Andre Regard, $150-$200 for associates, and $75 for administrative work."  [DE 126 at 9, Pg ID 1617].

The invoices do contain item codes for each entry.  Still, this makes it extremely difficult for the Court to determine a reasonable fee based on the rates charged by counsel.  The Court is unable to determine the meaning of some of the item codes on the invoices.

Additionally, it is unclear from the invoices which attorneys worked on which entries.  For instance, Andre Regard is an experienced trial attorney.  But the relevant experience of the associates who worked on this case or the exact billable rate for said associates is unclear.  In fact, at the non-discounted rates, Regard Law Group may charge anywhere from $350 and $75 for professional services based on the type of service rendered and the attorney working on a given task.

As such, in addition to the rates submitted by counsel, the Court may look to the prevailing rate for similar services in the community. In fact, New Jersey law requires that the Court consider the prevailing rate "'for similar services by lawyers of reasonably comparable skill, experience, and reputation' in the community." *Furst*, 860 A.2d at 447 (quoting *Rendine*, 661 A.2d at 1226).

Here, Herdguard did not submit affidavits or any proof about the prevailing rates for attorneys' fees for similar services in the community. As a result, the Court must look to fee awards in similar cases in the Eastern District of Kentucky.

NXT cites two cases to support its contention that $192.50 is a reasonable blended rate in this action. But these cases are unavailing.

First, NXT cites a recent opinion from the Western District of Kentucky for the proposition that $235 is a reasonable rate for an attorney in a breach of contract action. *See Heartland Materials, Inc. v. Warren Paving, Inc.*, No. 5:16-cv-146-TBR, 2019 WL 1576990 (W.D. Ky. Apr. 11, 2019) (publication pending).[2] But context matters. It is true that the attorney for the Plaintiff in the *Heartland* case was awarded a rate of $235 per hour. *Id.* at

---

[2] The Court notes that, at the time of writing this memorandum opinion and order, an appeal is pending in *Heartland Materials*. The appeal is currently docketed as No. 19-5510 before the United States Court of Appeals for the Sixth Circuit.

7. But the parties agreed that $235 per hour was a reasonable market rate for an attorney practicing in Morganfield, Kentucky. *Id.* Additionally, the plaintiff's attorney at issue had agreed to charge a rate of $200 per hour in addition to a contingency fee. *Id.* NXT excludes the *Heartland* court's finding that fees between $400 and $230 per hour were reasonable for attorneys from a large law firm based in Louisville, Kentucky. *Id.* at 3.

Thus, *Heartland* is not persuasive based on the facts and circumstances in this case. A reasonable market rate for counsel based in an urban area like Lexington is likely higher than the rate charged by counsel in a rural community like Morganfield. Furthermore, the *Heartland* court found that rates between $400 and $230 per hour were reasonable for attorneys based in Louisville.

Second, NXT cites *GATX Corp. v. Appalachian Fuels, LLC*, for the proposition that a rate of $225 for experienced attorneys and a rate of $150 for associates is a reasonable rate. *See* No. 09-cv-041-DLB, 2011 WL 3104070 (E.D. Ky. July 8, 2011). But it is important to look at the reasons that the court found these rates reasonable. In *GATX*, the court found that GATX "failed to demonstrate either that an out-of-town specialist was necessary, or that the fees charged by Chicago-based counsel were reasonable in light of the nature of this matter." *Id.* at *3. Additionally, the court found that local counsel's performance was adequate in a relatively simple breach of contract action. *Id.* As a result,

the court applied the rate charged by GATX's local counsel in Maysville, Kentucky. *Id.* at *4.

Again, the *GATX* decision is not compelling based on the facts before the Court in this case. If $225 per hour was a reasonable fee for an experienced attorney at a law firm in a rural community like Maysville in 2010, as the *GATX* court concluded, then it follows that a rate of $300 or more is reasonable for an experienced attorney at a law firm in Lexington, Kentucky in 2019.

In similar types of litigation, courts in the Eastern District of Kentucky have awarded rates of $300 per hour for experienced attorneys and between $150 and $180 per hour for associates. *See, e.g.*, *Doe v. Kentucky, ex rel. Tilley*, No. 3:15-cv-014-GFVT-EBA, 2018 WL 1629108 at *1 (E.D. Ky. Apr. 4, 2018) (granting $300 per hour to an experienced attorney in an action brought under 42 U.S.C. § 1983); *Laney v. Getty*, No. 5:12-cv-306-DCR, 2014 WL 5167528, at *3 (E.D. Ky. Oct. 14, 2014) (awarding $300 rate for experienced attorney and $180 rate for less-experienced associate); *Am. Canoe Ass'n v. City of Louisa*, 683 F. Supp. 2d 480, 488 (E.D. Ky. 2010) (finding $300 rate for partner-level work, $150 rate for associate-level work, and $75 rate for paralegal work appropriate).

Thus, it appears that rates awarded in similar cases in the Eastern District of Kentucky do not differ greatly from the non-discounted rates charged by the Regard Law Group. Here, however,

the Court must determine a reasonable blended rate for the time incurred in this action since the Court cannot conclusively determine how many hours were spent by each attorney. To that end, the Court finds that a $300 rate would be reasonable for the services of Andre Regard. Mr. Regard is an experienced trial attorney working with an office located in Lexington, Kentucky. Additionally, a $175 hourly rate is appropriate for the work of associates in this matter based on the non-discounted rates that Regard Law Group charges for the work of associates. The average of these rates is $237.50.

Still, under New Jersey law, the Court may also consider the fact that Regard Law Group took some risk by taking the case on a hybrid contingency fee basis. Here, Regard Law Group accepted some risk because if they were unsuccessful in the suit, Regard would have only recovered a portion of the fee for the services rendered in this action. Thus, to account for the acceptance of this risk, the Court will allow for a limited premium and award a reasonable fee of $250 per hour in this action.

The Court acknowledges that in *City of Burlington v. Dague*, the United States Supreme Court held that enhancement of the lodestar amount based on a case being taken on a contingency was impermissible under the fee-shifting statutes at issue. *See* 505 U.S. 557, 567 (1992). But *Dague* is easily distinguished from this case. In *Dague*, the United States Supreme Court was addressing

whether enhancement for contingency was appropriate under statutory fee-shifting provisions under § 702(e) of the Solid Waste Disposal Act or § 505(d) of the Federal Water Pollution Control Act. *See id.* at 559. But the holding pertaining to fee-shifting provisions under federal statutes is not relevant here.

Here, the Court is addressing whether enhancement of the rate of attorneys' fees is appropriate based on the law of the state of New Jersey. The New Jersey Supreme Court carefully evaluated the holding in *Dague* and nonetheless "concluded that a counsel fee awarded under a fee-shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed." *See Rendine*, 661 A.2d at 1228. Thus, New Jersey law allows for enhancement of the lodestar amount to account for risks assumed for taking a case on a contingent basis, even considering the holding in *Dague*.

In sum, a fee of $250 per hour is reasonable in this action based on the success achieved in this matter, the complexity of the legal issues involved, the rates proposed by counsel, and the prevailing market rate in this district for legal services.

**b.   Appropriate Numbers of Hours Expended**

Next, the Court must determine the appropriate number of hours expended in this action. To that end, the Court must determine

that the party moving for attorneys' fees was the prevailing party in the litigation.  Still, the party moving for fees, the Plaintiff in this matter, must provide sufficient documentation "to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate, Tile & Composition Roofers*, 732 F.2d at 502 n.2.

Here, there is no doubt that the Plaintiff was the prevailing party in this litigation.  Herdguard succeeded on their breach of contract claim against NXT after a jury trial.

Herdguard's invoices reflect 242.2 total hours worked in this litigation.  Still, for various reasons, some of these reported hours must be deducted from the final total.  After reviewing the voluntary deductions and invoices, the Court will deduct 47.95 hours from Herdguard's compensable time.  These deductions are explained in the subsections below.

**i.   Voluntary Deductions**

Herdguard has decided to voluntarily deduct or strike some hours from the submitted invoices.  [DE 126 at 3-4, Pg ID 1611-12].  These voluntary deductions are reflected in the Table 1 below.

**Table 1 — Voluntary Deductions**

| Pg ID of Invoice | Invoice Number | Hours Deducted | Explanation |
|---|---|---|---|
| Pg ID 1555, final entry | 6707 | 2 | Voluntary deduction |
| Pg ID 1559, fourth entry | 6979 | 0.5 | Voluntary deduction |
| Pg ID 1560, all | 7014 | 0.5 | Voluntary deduction |
| Pg ID 1561, all | 7090 | 2.25 | Voluntary deduction |
| Pg ID 1563, first and second entry | 7185 | 1.25 | Voluntary deduction |
| Pg ID 1565, first, second, and part of final entry | 7259 | 0.75 | Voluntary deduction |
| Pg ID 1578, first and second entry | 7887 | 3 | Voluntary deduction |
| **Total hours deducted** | | **10.25** | |

## ii. Redactions

Herdguard has redacted some of the explanations for the professional services rendered. These redactions make it impossible for the Court to determine whether the reported time spent is reasonable or compensable.

Some of the Herdguard invoices contain entries where the service date and description of the professional service rendered are completely redacted. [DE 123-2 at 6-7, 9, 14, Pg ID 1556-57, 1559, 1564]. The hours reported for these completely redacted entries will be deducted from the total amount of reported hours.

Additionally, some of the Herdguard invoices contain entries that have descriptions of the professional service rendered

partially redacted. [*Id.* at 4-5, 12, Pg ID 1554-55, 1562]. The time reported for these partially-redacted, block-billed descriptions of the professional service rendered must also be deducted because the partial redactions make it impossible for the Court to determine how much time was spent on the reported, unredacted professional service and how much time was spent on the redacted professional service.

For example, on invoice number 6637, the professional service rendered on the first line of the invoice says "██████████ ███ research, client call." [*Id.* at 4, Pg ID 1554]. The partial redaction results in two issues.

First, the redaction renders the explanation of the professional service insufficient. Simply put, the description of an activity as "research" does not provide the Court sufficient information to determine whether the reported time was reasonable. While the Plaintiff does not have to provide an exhaustive explanation of the service rendered, it must provide the Court enough information "to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Tile & Composition Roofers*, 732 F.2d at 502 n.2. The partial redaction results in an explanation that is insufficient to meet the Plaintiff's burden to demonstrate entitlement to the reported hours in the above example.

Second, the partial redaction makes it impossible for the Court to determine how much of the reported quarter hour was spent on research as opposed to a client call. The Court will not guess at how much time was spent on the client call as opposed to "research." As a result, the entire time reported for the partially redacted entries will be deducted from the total amount of reported time. The deductions due to redaction are reflected in Table 2 below.[3]

**Table 2 — Redactions**

| Page ID of Invoice | Invoice Number | Hours Deducted | Explanation |
|---|---|---|---|
| Pg ID 1554, first entry | 6637 | 0.25 | Partial redaction |
| Pg ID 1556, all | 6827 | 6 | Complete redaction |
| Pg ID 1557, all | 6907 | 0.75 | Complete redaction |
| Pg ID 1562, first entry | 7123 | 0.25 | Partial redaction |
| Pg ID 1559, first entry | 6979 | 0.25 | Complete redaction |
| Pg ID 1564, final entry | 7219 | 0.25 | Complete redaction |
| **Total hours deducted** | | **7.75** | |

**iii. Deductions for Hours Reported as to Other Defendants**

Even after accounting for voluntary deductions and redactions, Herdguard still reported hours that reflect work performed pertaining to claims against other Defendants. Here,

---

[3] Some of the deductions due to redactions are accounted for in Herdguard's voluntary deductions in the deduction above. They are not duplicated in this section.

Herdguard is only entitled to recover fees for time spent on claims in which it prevailed against NXT. This action was originally filed against multiple defendants who were either voluntarily dismissed from the case or who were dismissed on summary judgment. Under New Jersey law, NXT is not required to pay for time spent on these claims in which Herdguard did not prevail.

Additionally, since New Jersey disfavors attorney fee-shifting provisions, such provisions should be strictly construed. *Litton Indus., Inc.*, 982 A.2d at 406. Here, the Mutual NDA provides that the prevailing party is entitled to recover attorneys' fees "[i]n the event of any legal proceeding *between the parties*." [DE 68-14 at 2, Pg ID 859 (emphasis added)]. The Mutual NDA does not define the term "parties" used in this subsection.

Herdguard argues that the Mutual NDA arose out of the potential sale of the Bodyguard 360 formula and that Herdguard, NXT, Vermont Soap, PuraNaturals, and EcoShell were all parties to the potential sale. Even so, only Herdguard and NXT signed the Mutual NDA. Thus, based on a strict reading of the contract, the only parties bound by the provisions in the Mutual NDA, including the fee-shifting provision, were Herdguard and NXT.

As such, Herdguard is only entitled to recover attorneys' fees for costs and fees arising from the legal proceeding between Herdguard and NXT based on a strict reading of the fee-shifting

provision in the Mutual NDA. As a result, any remaining reported hours for time related to claims or legal proceedings against other Defendants, who were not parties to the Mutual NDA, must be deducted.

Moreover, many of the entries that report hours spent on work pertaining to other Defendants also contain time reported in the proceeding against NXT. Still, as the Court has already explained, these block-billed descriptions make it impossible for the Court to determine how much time was spent on an expense that is recoverable under the fee-shifting provision in the Mutual NDA.

For example, on Invoice 6945, Herdguard lists the following description of professional service rendered, "Draft complaint; research on Pura Naturals." [DE 123-2 at 8, Pg ID 1558]. The invoice lists a total of 1.5 hours spent on this professional service. Herdguard may recover fees for time spent drafting the complaint against NXT in this action. But Herdguard may not recover fees for time spent researching Pura Naturals, another Defendant who was voluntarily dismissed from the action [DE 25] because Herdguard did not prevail against Pura Naturals and Pura Naturals is not a party to the Mutual NDA's fee-shifting provision. With block billing, it is impossible for this Court to determine how much of the 1.5 hours spent on this professional service was spent drafting the complaint as opposed to researching Pura Naturals. As such, the Court must deduct the entire entry for

these block-billed descriptions that contain only some compensable time.

Of course, the United States Supreme Court has expressly prohibited district courts from determining fees based on the success or failure of individual claims where the claims arose from a common core of facts or related legal concepts. *See Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). But *Hensley* may be distinguished from this case. The *Hensley* court was addressing an award of attorneys' fees in a case brought under the Civil Rights Attorney's Fees Awards Act of 1976. Here, on the other hand, the Court is applying New Jersey law, which disfavors attorney fee-shifting provisions and requires that Courts construe such provisions strictly. As was previously discussed, the Mutual NDA's fee-shifting provision provides that the prevailing party is only able to recover attorneys' fees in the event of any legal proceeding between the parties. The only parties to the Mutual NDA were Herdguard and NXT. As such, the Court will only allow Herdguard to recover costs for time spent working on claims against NXT, not other Defendants who were not parties to the Mutual NDA.

Finally, NXT argues that some of the time entries related to depositions should be deducted from the compensable time because they pertain to claims on which Herdguard did not prevail. [DE 125-1 at 4, Pg ID 1606].

Multiple depositions were taken in July 2018. Some of the deponents were Vermont Soap employees. Still, those cost entries need not be redacted just because they were of Vermont Soap officials. It is true that these depositions partially pertained to claims against Vermont Soap. Still, the information from the depositions of Vermont Soap officials contained information about whether NXT and Vermont Soap engaged in a business relationship after the Mutual NDA was signed. These facts were relevant to Herdguard's substantive breach of contract claim against NXT. As such, the Court will not redact time related to depositions.

Table 3 below reflects the hours that are deducted based on the reported time pertaining to other Defendants against whom Herdguard either did not prevail or who were not parties to the Mutual NDA.[4]

**Table 3 — Deductions for Hours Pertaining to Other Defendants**

| Page ID of Invoice | Invoice Number | Hours Deducted | Explanation |
|---|---|---|---|
| Pg ID 1558, first entry | 6945 | 1.5 | Herdguard did not prevail against Pura Naturals |

---

[4] Defendants Pura Natural and Eco Shell were voluntarily dismissed from the action by Herdguard. [*See* DE 17; DE 25]. It is unclear whether these dismissals were the result of a settlement or whether these Defendants were dismissed for some other reason. Still, the stipulation of dismissal as to Eco Shell says that "the respective parties [are] responsible for their own attorney fees and costs incurred related to this matter." [DE 17 at 1, Pg ID 103]. Thus, at least as to Eco Shell, it appears that Herdguard agreed to bear its own costs and fees, regardless of whether it was a prevailing party on those claims.

| Pg ID 1562, final entry | 7123 | 0.5 | Herdguard did not prevail against Eco Shell |
|---|---|---|---|
| Pg ID 1571, final entry | 7549 | 0.5 | Herdguard did not prevail against Vermont Soap. |
| Pg ID 1573, first and fourth entries | 7644 | 2 | Herdguard did not prevail against Vermont Soap. |
| Pg ID 1575, second and third entries | 7723 | 0.5 | Deducted time reported for correspondence with Mark Moseley, counsel for Vermont Soap. |
| Pg ID 1578, fourth and fifth entries | 7887 | 4 | Fourth entry: "review NXT and Vermont Soap Responses.<br><br>Fifth entry: "Review motion for summary judgment filed by defendants." Presumably "defendants" included Vermont Soap.<br><br>Again, Herdguard did not prevail against Vermont Soap. |
| **Total hours deducted** | | **9** | |

iv. **Deductions for Inadequate Descriptions**

Some of the reported hours must be deducted from the recoverable amount based on insufficient descriptions. Ultimately, while Plaintiff need not go into extensive detail, Plaintiff must provide a sufficient description of the professional service rendered. Otherwise, the Court is unable to

determine if the reported amount of time is reasonable or compensable.

For example, "research" is an inadequate description of the professional service rendered. Another judge on this Court explained that descriptions such as "continued research" are "sufficiently descriptive when previous entries describe the subject of the research." *Laney*, 2014 WL 5167528, at *4. The rub here, however, is that Plaintiff fails to describe the subject of the research in any of the entries. This leaves the Court wonder about the subject of the research or which client the research applied to. As a result, time reported for conclusory or cursory professional service descriptions like "research" must be deducted from the awarded fees because the Court is unable to determine if the fee is reasonable based on these insufficient descriptions.

Additionally, some descriptions fail to provide enough meaningful information to allow the Court to review the reasonableness of the entry. For example, "Case work and draft letter" [*See* DE 123-2 at 2, Pg ID 1552], is an insufficient description because it fails to specify what work was actually being performed or to which Defendant the service applies.

Finally, to the extent that block-billed professional service descriptions contain insufficient detail, the entire entry containing an insufficient description must be deducted because,

based on the insufficient description, the Court is unable to determine how much time was spent on each activity. The table below reflects deductions due to inadequate professional service descriptions.

**Table 4 — Deductions for Insufficient Descriptions**

| Pg ID of Invoice | Invoice Number | Hours Deducted | Explanation |
|---|---|---|---|
| Pg ID 1552, third entry | 6569 | 1 | "Case work and draft letter" is an insufficient description. |
| Pg ID 1553, only entry | 6601 | 0.25 | "Client call; research" is an insufficient description |
| Pg ID 1554, third and fourth entries | 6637 | 3.45 | "Research" is an insufficient description. |
| Pg ID 1558, second and third entries | 6945 | 3.75 | "research and drafting complaint" is an insufficient description due to "research." |
| Pg ID 1565, final entry | 7259 | 3 | "Research" is an insufficient description. |
| **Total hours deducted** | | **11.45** | |

Additionally, NXT objects to "client meeting" as an insufficient description. [*See* DE 125-1 at 2, Pg ID 1604]. Still, while this description may leave some detail to be desired, counsel for the Plaintiff had an obligation to meet with their clients early during the case. The hours reported for these client meetings do not appear unreasonable. Additionally, since NXT was

the initial Defendant in this action, it is highly likely that the claims against NXT were discussed at these meetings. As a result, the Court will not redact entries for "client meetings" due to insufficient descriptions.

v.  **Reductions for Excessive Time**

NXT argues that the hours reported by Herdguard for responding to NXT's motion for summary judgment are excessive and must be reduced. [DE 125 at 10, Pg ID 1597]. In support of this argument, NXT points out that Herdguard's response in opposition [DE 65] was only thirteen pages in length, contains only five pages of legal argument, and does not contain any citation to legal authority in the argument section. [DE 125 at 10, Pg ID 1597]. As a result, NXT contends that the nineteen hours reported for responding to NXT's motion for summary judgment should be reduced by at least half.

In its sur-surreply, Herdguard fails to specifically address NXT's argument that the time spent responding to the motion for summary judgment was excessive. Herdguard simply makes a generalized argument that all the reported hours are reasonable. [See DE 126 at 7-8, Pg ID 1615-16]. This suggests that Herdguard does not have an adequate response to NXT's argument on the excessiveness of the hours reported for the response to NXT's motion for summary judgment.

Here, NXT is correct that the hours reported by Herdguard for responding to NXT's motion for summary judgment are excessive. Herdguard's response to NXT's motion for summary judgment is only thirteen pages. [*See* DE 65]. The substantive legal analysis section of the response in opposition contains very little, if any, legal analysis of outside authorities and primarily cites directly to the non-disclosure agreements at issue in the case. [*See id.* at 7-13, Pg ID 442-48]. As such, it simply does not appear reasonable that Herdguard's attorneys spent nineteen hours responding to NXT's motion for summary judgment.

New Jersey law allows courts to exclude or reduce hours that are not reasonably expended if they are excessive or redundant. *See Rendine*, 661 A.2d at 1226.

As a result, the Court will reduce the number of hours reported for responding to NXT's motion for summary judgment by 50%. For the sake of consistency, the deduction is reflected in the table below.

**Table 5 – Deduction for Excessive Time**

| Pg ID of Invoice | Invoice Number | Hours Deducted | Explanation |
|---|---|---|---|
| Pg ID 1577, second, third, and fourth entries | 7863 | 9.5 | Deduction for excessive amount of time reported for task. |
| **Total hours deducted** | | **9.5** | |

**c.   Calculating the Lodestar**

The lodestar is calculated by multiplying the number of compensable hours incurred by the reasonable rate of attorneys' fees.  Here, Herdguard reported spending 242.2 hours on this action.  After deducting 47.95 hours, the total number of compensable hours is 194.25.  After multiplying the number of compensable hours by the rate of $250 per hour, Herdguard is entitled to a total of $48,562.50 in attorneys' fees.

### B.   Calculation of  Reasonable Costs

In addition to attorneys' fees, Herdguard is also contractually entitled to recover costs as the prevailing party in this litigation.  [*See* DE 68-14 at 2, Pg ID 859 ("[T]he prevailing party shall be entitled to recover . . . its costs and expenses.")].  Herdguard's invoices reflect $4,983.36 in total costs.  NXT has objected to two of the cost entries.

First, NXT objects to an entry in the amount of $1,224.65 on invoice 7863, which says only "Vermont Soap.  [*See* DE 123-2 at 27, Pg ID 1577].  NXT claims that this entry is for a cost related to a claim against Vermont Soap, not NXT.

But the primary issue with the entry is that it lacks sufficient detail, making it impossible for the court to determine if this cost is compensable.  Herdguard did take depositions of Vermont Soap officials.  While those depositions were partially related to the claims asserted by Herdguard against Vermont Soap,

the Vermont Soap depositions were also relevant to the claims against NXT. The problem here, however, is that the lack of detail makes it impossible to decipher the reported cost. Was this a cost associated with the deposition at Vermont Soap? Is it for travel to the Vermont Soap location? Is it a duplicate? Unfortunately, it is impossible to definitively answer any of these questions based on the limited detail in the description. As a result, this entry must be redacted from the compensable costs.

Second, NXT objects to an entry in the amount of $891.15 on invoice 7644, which says "Hughes court reporter." [*Id.* at 23, Pg ID 1573]. NXT contends that it is unclear to which deposition the cost pertains. Still, as the Court has already explained, these depositions were relevant to the substantive claims. As such, the Court will not redact the entry for "Hughes court reporter" on invoice 7644.

In sum, Herdguard is contractually entitled to recover costs as the prevailing party in this litigation. Herdguard's request for attorneys' fees, as reflected in the motion and invoices, includes $4,983.36 in costs and expenses not related to attorneys' fees. One of these cost entries, $1,224.65 for "Vermont Soap," lacks sufficient detail and must be deducted. After deducting the aforementioned entry, Herdguard is entitled to $3,758.71 in costs related to this litigation.

### III. Conclusion

After applying the lodestar approach outlined under New Jersey law, and accounting for deductions to ensure that the reported hours are reasonable and compensable, Herdguard is entitled to $48,562.50 in attorneys' fees and $3,758.71 in costs. Accordingly, **IT IS ORDERED** as follows:

(1) Herdguard's motion for attorneys' fees [DE 19] is **GRANTED IN PART** and **DENIED IN PART**;

(2) Herdguard is entitled to $48,562.50 in reasonable attorneys' fees as the prevailing party in this action;

(3) Herdguard is entitled to $3,758.71 in reasonable costs as the prevailing party in this action; and

(4) The Court will enter separate judgment consistent with this memorandum order and opinion and the jury's verdict.

This the 15th day of July, 2019.



**Signed By:**

**_Joseph M. Hood_**

**Senior U.S. District Judge**