UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| HERDGUARD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. |
| v. | ) | 5:16-cv-468-JMH-EBA |
| | ) | |
| NXT GENERATION PET, INC., *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM** |
| Defendants. | ) | **OPINION & ORDER** |
| | ) | |

\*\*\*

Following the entry of a verdict and $120,000 damage award against it, Defendant NXT Generation Pet, Inc. ("NXT") asks this Court to examine the trial record in this case and rescind the jury's findings. In its renewed motion for judgment as a matter of law, NXT argues that Plaintiff Herdguard, LLC presented irrelevant and potentially misleading information to the jury on the issue of damages. [DE 129]. Herdguard argues that the testimony of its founder regarding the company's own markup was sufficient evidence for the jury to find a breach of the parties' contract and award damages.

The Court agrees with NXT's position that the jury lacked any relevant information on which to base its $120,000 verdict in favor of Herdguard. After carefully reviewing the trial record in this matter, the Court finds that the jury's verdict was clear error and against the weight of the evidence. Thus, NXT's renewed motion

for judgment as a matter of law will be granted, as well as its conditional motion for a new trial.

## I. FACTUAL AND PROCEDURAL HISTORY

The factual and procedural background in this case are not disputed by the parties. Here, the Court briefly summarizes the parties' litigation history and the trial transcript.

**A. Procedural history**

Herdguard filed this action for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, tortious interference with business relationships, and civil conspiracy against five defendants in Garrard Circuit Court. [DE 1-1]. The initial complaint sought actual damages, punitive damages, and attorneys' fees. The action was removed to this Court based on diversity jurisdiction. [DE 1]. Through various voluntary dismissals and grants of summary judgment, the action was reduced to a single breach of contract count against Defendant NXT Generation Pet, Inc. [See DEs 18, 25, 90].

As a result, the only remaining claim was Herdguard's breach of contract count against NXT arising from the alleged violation of a non-circumvention clause contained in non-disclosure agreements signed by the parties. [*See* DE 90]. This contract contained a liquidated damages clause in the event of breach, to be determined by the breaching party's "financial gain" from the prohibited transaction. Herdguard alleged that NXT would have

2

never conducted business with third-party manufacturer Vermont Soap if Herdguard had not provided this confidential information to NXT in the parties' business negotiations. Herdguard was damaged, it alleged, when NXT purchased more than $144,000 in product from Vermont Soap that it later sold. A trial by jury on the breach of contract dispute was held on March 26, 2019 and March 27, 2019. [DEs 112 and 114]. The jury returned a verdict for Herdguard and awarded $120,000 in damages. [DE 117].

**B. Relevant factual information from trial in this matter**

On the first day of trial, Herdguard founder Kenneth Stewart testified. [DE 133]. While examining an exhibit containing Herdguard's "product list," Stewart discussed the product markup from the distributor to the dealer, then from the dealer to the end-retail cost. [DE 133 at 15-20]. Stewart explained that the distributor cost represented what the buyer would pay to purchase products from Herdguard. [*Id.* at 16]. The dealer cost, he explained, is what a dealer would purchase the product for from the distributor. [*Id.*]. Finally, he testified that the MSRP price is what a retail store would sell it for. [*Id.*].

Stewart then explained that there are "standards" used in the industry for markup. [*Id.* at 17]. Stewart stated that "typically everybody likes to make 40 percent" from the manufacturer to the distributor. [*Id.*]. If the product went straight to the end buyer, Stewart stated that there would be another forty percent or so

3

markup. [*Id.*]. It was further clarified that these numbers were only what Herdguard suggested the markup should be for their products and these numbers should not be considered industry standards. [*Id.* at 18-19]. The jury also heard the testimony of Larry R. Plesent, the founder of Vermont Soap. [DE 135 at 7]. Plesent testified that NXT purchased $144,754.91 in product from Vermont Soap. [*Id.* at 16-17]. This purchase occurred while NXT was in negotiations with one of Vermont Soap's clients, Herdguard. [*Id.* at 18].

At the close of Herdguard's case-in-chief, NXT moved for judgment as a matter of law under Federal Rule of Civil Procedure 50. [DE 135 at 37]. NXT contended that Herdguard failed to present evidence of damages resulting from the breach, arguing that NXT's purchase from Vermont Soap was not a financial gain for NXT. [*Id.*]. Herdguard submitted the deposition testimony of NXT President Jason Riccardi, read to the jury, as evidence of damages. [*Id.* at 39]. Riccardi stated that NXT did sell the products it purchased from Vermont Soap. [*Id.* at 39]. Applying Stewart's testimony regarding markup to the more than $144,000 in product NXT purchased from Vermont Soap, Herdguard argued that the information was sufficient for the jury to determine NXT's "financial gain." [*Id.* at 39-40]. Herdguard additionally argued that if NXT wanted to debate that number, it easily could have presented testimony to that effect at trial. [*Id.*]. This Court denied NXT's motion for

judgment as a matter of law at the close of Herdguard's case and at the close of all evidence.

The undersigned then gave the jury specific instructions for determining liability and damages in this case. [DE 116]. If the jury found that NXT did breach the agreement, it would be required to determine damages. On the calculation of damages, the Court instructed the jury as follows:

> If you find that Defendant NXT is liable to Plaintiff Herdguard, then you must determine the amount of damages. In this case, the contracts in question contain a liquidated damage provision stating the amount of damages to be awarded in the event of a breach. The law allows liquidated damage provisions, provided that the provision for such damage is not intended as a penalty or punishment and bears a reasonable relation to the damages that might actually be sustained if the contract is breached.
>
> Therefore, if you find for Herdguard on the issue of breach of contract, Herdguard is entitled to the liquidated damages as stated in the contract. The amount of liquidated damages to be awarded in the case of breach is the "financial gain." The term "financial gain," based on its plain meaning, is ordinarily understood as the amount of total monetary gain by which the revenue of a business exceeds its cost of operating.

[DE 135 at 69-70]. The jury reached a verdict on the afternoon of March 27, 2019. [DE 115]. Before finalizing the verdict, the jury submitted a question to the undersigned, stating "[i]f damages are decided does the jury have to determine a specific monetary amount." [*Id.*]. The undersigned responded to the jury's question, indicating that they did have to determine an actual amount of

5

damages. [*Id.*]. The jury awarded $120,000 in liquidated damages to Herdguard. [DE 117 at 2].

NXT timely filed the instant motion, claiming it is entitled to judgment as a matter of law on the breach of contract claim because, it claims, Herdguard "failed to present sufficient evidence of damages to satisfy its burden of proof" at trial. [DE 129-1]. NXT asks, in the alternative, that the Court grant a new trial on the issue of damages. [*Id.*]. Finally, NXT asks for, at a minimum, reduction of the jury award in the form of remittitur.

## II. STANDARDS OF REVIEW

### A. Motion for judgment as a matter of law

A motion for judgment as a matter of law may be renewed within ten days after the entry of judgment. Fed. R. Civ. P. 50(b). Federal courts sitting in diversity must use the standard of review "used by the courts of the state whose substantive law governs the action." *Tompkins v. Crown Corr., Inc.*, 726 F.3d 830, 844 (6th Cir. 2013)(citations omitted). This case is governed by New Jersey law.

In New Jersey, a renewed motion for judgment as a matter of law following a jury verdict is labeled a motion for judgment notwithstanding the verdict. N.J. Ct. R. 4:40-2(b). The rule states:

> If a motion for judgment is denied and the case submitted to the jury, the motion may be renewed in accordance with the procedure prescribed by R. 4:49-1 (new trial)

> within 20 days after the verdict or the jury's discharge. A motion so renewed may include in the alternative a motion for a new trial, and every motion made by a party for a new trial shall be deemed to include, in the alternative, a renewal of any motion for judgment made by that party at the close of the evidence. If the motion is granted on renewal thereof, the court shall nevertheless rule on the motion for a new trial determining whether it should be granted if the judgment is thereafter reversed or vacated.

N.J. Ct. R. 4:40-2(b). The Court must evaluate the motion under the following evidential standard:

> [I]f, accepting as true all evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied.

*Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 552 (N.J. 2000)(internal citations omitted). Of course, the jury's determination is entitled to considerable deference and should be upheld absent a carefully reasoned and factually supported determination. *Dolson v. Anastasia*, 258 A.2d 706, 707-08 (N.J. 1969)(citing *Kulbacki v. Sobchinsky*, 185 A.2d 835, 841 (N.J. 1962)(overruled in part on other grounds)). The purpose of this remedy is to correct "clear error" by the jury. *Id*. It is not for the judge to substitute his or her judgment for the jury simply because he or she would have reached the opposite conclusion. *Id*.

7

**B. Motion for a new trial**

A new trial may be warranted under Federal Rule of Civil Procedure 59(a)[1] "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). This may be the case when a jury has reached a "seriously erroneous" result, as evidenced by "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015). Finally, the Court cannot set aside the jury's verdict simply because it thinks another result is more justified. *See Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014).

### III. DISCUSSION

**A. Renewed motion for judgment as a matter of law**

NXT argues that a reasonable jury could not find for Herdguard on its breach of contract claim because the jury did not have a "legally sufficient basis" to find that damages resulted from the breach. [DE 129-1 at 6]. NXT points to New Jersey case law stating

---

[1] Herdguard correctly notes, and NXT does not dispute, that federal procedural law governs a federal district court's decision to grant a new trial based on the weight of the evidence. [DE 136 at 9 (citing *Conte v. General Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000)].

8

that "when the party alleging breach of contract fails to present evidence which tends to demonstrate reasonably certain and definite consequences of a breach, the opposing party is entitled to judgment." *Tannock v. N.J. Bell Tel. Co.*, 537 A.2d 1307, 1310 (N.J. 1988)(citing *Weiss v. Revenue Building & Loan Ass'n*, 182 A. 891 (N.J. 1936)). Specifically, NXT alleges that Herdguard did not submit any methodology for measuring NXT's revenue or costs, as required by the definition of "financial gain" in the jury instructions. [DE 129-1 at 8]. In fact, NXT states that Riccardi disputed Herdguard's implication to the jury that NXT used the same markup on its products. [*Id*. at 9].

Herdguard begins its response by emphasizing the high threshold a party must meet in order to successfully challenge a jury verdict. [DE 136 at 3]. Herdguard then presents the testimony of both Stewart and Riccardi to demonstrate that NXT sold products directly to retailers without a distributor, to explain the markup prices Herdguard uses, and to prove that NXT did purchase more than $144,000 in product from Vermont Soap. [*Id*. at 7-8]. Herdguard further explains that Riccardi said the cost of the purchase from Vermont Soap could have been closer to $150,000. [*Id*. at 9]. Applying Herdguard's eighty percent markup to $150,000, the company argues that the final "financial gain" for NXT should be $120,000—the exact award provided by the jury. [*Id*.].

9

It is the duty of this Court to uphold the jury's verdict, unless it finds that it was unreasonable for the jury to rely on the above evidence in calculating damages for Herdguard. Though the standard is highly deferential to the jury, and although mere uncertainty as to the amount of damages will not conclusively bar recovery under New Jersey law, the party alleging breach must present some evidence at trial that would demonstrate a reasonably certain consequence of breach. After carefully reviewing the record in this case, it is evident that Herdguard did not do so, and thus, NXT is entitled to judgment.

Of course, it is possible that NXT did receive so-called "financial gain" from a violation of the non-circumvention clause. But the information presented at trial to prove that financial gain was entirely irrelevant to any "total monetary gain by which the revenue of [NXT] exceeds its cost of operating." [DE 135 at 69-70 (jury instructions)]. Herdguard presented no evidence that would allow a reasonable jury to conclude that NXT received "financial gain" from the more than $144,000 deal with Vermont Soap, or any other deal in violation of the non-disclosure agreement.[2] Stewart's testimony about Herdguard's products in no

---

[2] The Court notes here that, at one point during the discovery phase of this case, Herdguard did seek sale receipts and other information that would have involved the Vermont Soap transaction. [DE 58 at 2-3]. NXT only provided receipts of their purchases from Vermont Soap. [*Id*. at 3]. Herdguard filed a motion to compel discovery of this information because of its relevance to the exact

10

way demonstrates what monetary gain NXT would have made from the sale of the Vermont Soap products. In fact, Riccardi's testimony that the company *did not* use any kind of standard markup rate directly contradicts Stewart's assertion that the standard is usually forty or eighty percent. Even drawing all legitimate inferences in Herdguard's favor, the jury could not have reasonably relied on the information provided by the parties to determine a damages award under the definition of "financial gain" provided to jurors. There is no interpretation of Herdguard's evidence of damages that equates to NXT's "financial gain" from violation of the parties' agreement.

Herdguard, in its response to the motion continuously brings up the fact that NXT failed to provide testimony or any evidence of operational costs or profit margins to challenge the testimony of Stewart. [DE 136 at 2]. But, as the undersigned explained at trial, NXT did not have the burden of proving damages, Herdguard did. Requiring NXT to put on testimony as to its own operational

---

issue briefed before the Court here, but only after the discovery deadline had significantly passed. [DE 63 (Magistrate Judge Edward B. Atkins' memorandum opinion and order on Herdguard's motion to compel)]. Because Herdguard failed to provide any justification for filing the motion past the close of discovery, Magistrate Judge Atkins denied the motion to compel. [*Id.* at 6 ("Upon review of the email correspondence between the parties, the Court finds that even if Plaintiff recognized and contacted defense counsel about the alleged deficiencies regarding the response to Request #19, Plaintiff did not bring them to the Court's attention until *after the undersigned was advised that there was a discovery dispute* well after the time to complete discovery ended.")].

costs would be to require the defendant to prove damages for the plaintiff's case. Herdguard is the party that was put on notice following the first motion for a directed verdict that its evidence of damages may not have been sufficient for the jury to find in its favor.

Because a breach of contract claim in New Jersey requires the plaintiff to prove damages as an element of the case, Herdguard's claim must fail in its entirety as a matter of law. *See, e.g., EnviroFinance Group, LLC v. Envir. Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. Super. 2015)("To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to [sustain] damages.")(internal citations omitted). Again, in New Jersey, the "plaintiff bears the burden of proving beyond uncertainty that he has in fact been damaged, and once that has been established the plaintiff bears the burden of proving the amount of such damages with a reasonable degree of certainty." *Lightning Lube v. Witco Corp.,* 802 F.Supp. 1180, 1194 (D.J.J. 1992). Herdguard failed to meet this standard at trial.

**B. Motion for a new trial**

The Federal Rules of Civil Procedure require that the Court conditionally rule on any motion for a new trial if it grants a renewed motion for judgment as a matter of law. Fed. R. Civ. P.

50(c)(1). Although the Court's discretion to grant a new trial is greater than its discretion to grant a motion for judgment as a matter of law, a new trial should only be permitted when the verdict clearly is against the weight of the evidence. See *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).

The verdict in this case is plainly against the weight of the evidence. The only evidence presented on the issue of damages was the testimony of Stewart, who, as stated above, explained what his own company's markup would be. Stewart was not permitted to testify as an industry expert, so his testimony only revealed what Herdguard's own markup was. The jury was never presented with any information it could reasonably rely on to determine what financial gain NXT received when it violated the non-circumvention clause. After thoroughly reviewing the record, it is clear that the jury erroneously relied on testimony that could not reasonably calculate NXT's "financial gain" from the Vermont Soap deal. Thus, the Court will conditionally grant a new trial in the event that its judgment as a matter of law is vacated or reversed on appeal.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Herdguard failed to present any relevant evidence of damages to the jury. Thus, reasonable minds could certainly differ as to the jury's conclusion that Herdguard was damaged in the amount of $120,000. The uncertainty and lack of relevant information presented on the

13

necessary element of damages requires this Court to enter judgment as a matter of law on NXT's behalf. Additionally, because the verdict was against the clear weight of the evidence, the Court will conditionally grant NXT's motion for a new trial.

Accordingly, having reviewed the motions, Herdguard's arguments in opposition, and NXT's reply, and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Defendant NXT Generation Pet Inc.'s motion for judgment as a matter of law [DE 129] is **GRANTED**;

(2) Defendant NXT Generation Pet, Inc.'s motion for a new trial [DE 129] is **CONDITIONALLY GRANTED** in the event that the judgment entered contemporaneously herein is vacated or reversed on appeal;

(3) The verdict and judgment entered in favor of Plaintiff Herdguard, LLC [DE 128] is **SET ASIDE**; and

(4) Judgment in favor of NXT Generation Pet, Inc. **SHALL** be entered contemporaneously with this Memorandum Opinion and Order.

This the 10th day of February, 2020.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge